John LEMER, Plaintiff and Appellant,

v.

Joe KOBLE, Roman Haneberg and George Sendelbach, as the Board of Township Supervisors of Strege Township, McHenry County, North Dakota, and Strege Township, a public corporation of the State of North Dakota, and Jack J. Kuntz, Defendants and Respondents.

No. 7717.

Supreme Court of North Dakota.

Nov. 15, 1957.

Friederich & Ziegler, Rugby, for appellant.

Victor V. Stiehm, Towner, for respondents Joe Koble, Roman Haneberg and George Sendelbach, as Board of Tp. Sup'rs of Strage Tp., McHenry County, and Strage Tp.

Duffy & Haugland, Devils Lake, for respondent Jack H. Kuntz.

GRIMSON, Chief Justice.

This is an action involving the drainage of surface waters. Plaintiff in his amended complaint states that he is and has been for the last ten years, a farmer and the owner of the East Half (E½) of the Southwest Quarter (SW¼), West Half (W½) of the Southeast Quarter (SE¼) and East Half (E½) of the Southeast Quarter (SE¼) of Section Four (4), Township One Hundred Fifty-two (152), Range Seventy-six (76), McHenry County, North Dakota; that Jack J. Kuntz is and for sometime past has been the owner of the Northeast Quarter (NE¼) of Section Nine (9) in said township and range; that the defendant, Kuntz, had by ditching operations drained surface waters from his premises into a depression that lies between his and plaintiff's property; that a graded township roadway ran through the depression; that the defendant township supervisors wrongfully had an 18-inch, steel culvert put in that grade releasing the water from the Kuntz side onto the plaintiff's property causing damage to his crops and real property. Plaintiff then asked for $1,000 damages, and that the court issue a perpetual injunction enjoining the defendants from discharging surface water through that culvert.

The defendants entered a general denial and allege that the culvert was lawfully installed by the township officers and that the damages caused the plaintiff, if any, were by reason of a heavy rainfall on or about June 13, 1954. Upon the trial it was stipulated between counsel that the injunction aspect of the case be first tried to the court. At the conclusion of the trial thereof the court found for the defendant, denied an injunction and ordered judgment dismissing the action. From that judgment this appeal is taken "from the whole of said judgment." While the procedure on appeal is not fully in accordance with the Code no objections thereto were filed nor is that argued in the briefs. We will, therefore, consider the whole case on the merits.

Plaintiff claims that the court "misconstrued the legal effect of the decisions in North Dakota relative to the reception of surface waters by a lower land owner from a tributory water shed as they are accustomed to come in the state of nature." The court, in its memorandum opinion cited the following authority from Henderson v. Hines, 48 N.D. 152, 183 N.W. 531, 535:

> "In other words, the measure of a land owner's right and reciprocating duty in the removal or disposition of surface waters is to be guided by the principle of law that he had the right to possess, use, and enjoy his land subject to the principle, 'sic utere tuo ut alienum non laedas.'"

The real meaning of that Latin phrase is "So use your own property as not to injure the rights of another." See Broom's Legal Maxims, p. 364. The rules regarding the rights of upper and lower land owners regarding the flow of surface waters were discussed in the prior action of Soules v. Northern Pac. R. Co., 34 N.D. 7, 157 N.W. 823, 826, L.R.A.1917A, 501. There Judge Bruce, discussing both the common-law rule giving the landed proprietor the right to do anything necessary for the protection of his property from water ravages and the rule of the civil law which prevents the lower proprietor from doing anything that will cast the water back upon the land above, comes to a conclusion that when the water was coming down a natural drainway it is immaterial whether the so-called common enemy or the civil-law rule as to

surface waters prevails in North Dakota, as under both "the natural drainways must be kept open to carry the water into the streams, and that the lower estate is subject to a natural servitude for that purpose." In Froemke v. Parker, 41 N.D. 408, 171 N.W. 284, this court says:

"Such draw or runway is simply a natural drainway for the surface waters of the watershed that it serves. The lower landowner over whose land such natural drainway exists has no legal ground of complaint to the reception of the surface waters in such drainway from the tributary watershed as they were accustomed to come in a state of nature." See, also, Reichert v. Northern Pacific R. Co., 39 N.D. 114, 167 N.W. 127, 134; McHenry County v. Brady, 37 N.D. 59, 163 N.W. 540.

The topography of the lands involved was very irregular, dotted with hills, potholes and sloughs. The survey of the premises concerned showed that there was a very gradual slope to the north. While there was no regular water course there were elongated depressions or drainways showing natural drainage of the water towards the north.

Clearly the evidence warrants the application of the rule as to the drainage of surface waters laid down in Henderson v. Hines, supra, and adopted by the trial court in this case.

The evidence shows that the section line between the lands of the plaintiff and defendant, Kuntz, was graded in 1913. This road runs through a depression or slough which is mostly in the Kuntz land, south of the highway, but extends north across the highway into plaintiff's land. A culvert through the grade was installed. From this slough extends a well-defined channel which runs north a little way and then separates into two branches, one to the northeast and one to the northwest. The Great Northern Railway passes over the plaintiff's land diagonally from the north-east corner to the southwest corner crossing the drainways. A culvert was placed in each drainway. The water running through the southwest drainway empties into the 16-acre depression on plaintiff's land.

The road was re-graded in 1931 and no culvert was then placed in the depression between the plaintiff's and defendant's lands. On June 13 and 14, 1954, an unusually heavy rain fell and as a result the slough through which the grade passed was filled with water which was by the highway grade backed up over part of the Kuntz land. The elevation of the road at the culvert was 102½ feet and the water in the south side of the grade had come up to 102 feet so it was seeping into the grade to such an extent as to threaten the entire road and the grade acted as a dam of the water which otherwise would have flowed by the natural drainways over plaintiff's land.

Defendant Kuntz had before and now again appealed to the township board of supervisors for the placing of a culvert in the grade so the water could go out the natural drainway.

Section 24–0601, NDRC 1943, gives a general supervision over the roads, highways and bridges to the Board of Township Supervisors. Under that authority it is the duty of the Board to inspect and make plans and specifications for culverts to be constructed where necessary. Caterpillar Tractor Co. v. Detman Township, 62 N.D. 465, 244 N.W. 876. The evidence shows that the Board of Supervisors inspected this road grade after the June 13th rain and found conditions such that they decided to install the culvert to protect the grade as well as to release the water for natural drainage. It was unlawful for the Board to allow the highway grade to obstruct any such drainage or water course. Section 61–0107, NDRC 1943. In Viestenz v. Arthur Township, 78 N.D. 1029, 54 N.W.2d 572, this court held that section 24–0633, NDRC 1943, made it the mandatory duty for township supervisors to provide drainage for any

water which may accumulate in the ditches along the highway so as to prevent such water from overflowing onto adjoining lands. It was their duty to do that and they could have been compelled to do so by any injured party.

■■■ Plaintiff claims that in addition to the rain which had fallen and filled this depression and road ditch, the defendant had drained a little pothole on his land into another slough and that the water from both such sloughs drained into this large depression at the highway and thus added to the water drained onto his land and increased his damages. This was done by Mr. Kuntz in the improvement of his farm under supervision of the Soil Conservation Service. This pothole was one-half acre in extent. The depression in which the culvert was placed consisted of six acres. The evidence shows that if all the water diverted from that pothole was drained into the depression in the northern part of plaintiff's land it would have raised the water there only one-fifth of an inch. That could not cause him any material damage. For the water that came by natural drainage Mr. Lemer was not entitled to any damage as his land was subject to that servitude. Thus there does not seem to have been any evidence to show appreciable damage.

The plaintiff claims as error the failure of the court to enjoin the defendants from further discharging large quantities of surface water by way of the culvert upon the plaintiff's property. It was the duty of the supervisors to install the culvert. They had to provide an outlet for the natural drainage of surface waters. To that the plaintiff could have no valid objection. There is no showing that by ditching his land for its improvement, Kuntz wrongfully injured the plaintiff. There are no grounds shown for the issuance of an injunction.

We have carefully reviewed the record in this case and the very thorough memorandum decision of the trial court. We have come to the conclusion that the court made proper findings of fact and drew the proper conclusions therefrom.

There being no damages shown and no grounds for an injunction the action was properly dismissed.

■■■ Appellant claims that the court abused his discretion in allowing costs to the defendant. The case was tried as an equity suit. In an equity suit the district court has discretion in the matter of costs. Austad v. Dreier, 57 N.D. 224, 221 N.W. 1; Hilde v. Nelson, 19 N.D. 634, 125 N.W. 474. The only question for us is whether the court abused its discretion in allowing costs. No abuse of discretion is shown.

The judgment of the district court is affirmed.

MORRIS, SATHRE, JOHNSON and BURKE, JJ., concur.